UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIPPA HAGGAR,

                Plaintiff,

vs.

BUCHANAN INGERSOLL & ROONEY P.C.,
SLOTNICK SHAPIRO & CROCKER LLP and
BARRY IVAN SLOTNICK,

                Defendants.

ECF

AMENDED COMPLAINT
WITH JURY DEMAND

Case No. 06-cv-6822
(DC) (DFE)



RECEIVED
OCT 2 5 2006
U.S.D.C. S.D N.Y.
CASHIERS

        Plaintiff, Philippa Haggar, by her attorneys, Tuckner, Sipser, Weinstock & Sipser, LLP, complains as follows:

## NATURE OF THE CASE

1.     This is an action arising under the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et. seq, and particularly Section 510 (29 U.S.C. §1140) as well as under the "Human Rights" laws of the State of New York and the City of New York, seeking declaratory relief and damages to redress the injuries Plaintiff Philippa Haggar has suffered as a result of being discriminated against on the basis of her disability and/or perceived disability, and as a result of being retaliated against for her protected complaints of disparate treatment. Further, Defendants' actions in violation of ERISA interfered with Plaintiff's rights under an applicable employee benefit plan.

2. In 2002 Plaintiff, an attorney who worked for Defendant Slotnick, Shapiro & Crocker LLP (hereinafter also described as "SSC") for over eight years was diagnosed with advanced breast cancer which had metastasized into her bones. This is an incurable terminable condition. Despite her illness and resulting disability, Plaintiff continued to work for SSC at the same terms and conditions that existed prior to her illness.

3. As more fully described below, in early 2005, SSC entered into a merger with Defendant Buchanan Ingersoll & Rooney P.C. (hereinafter also described as "Buchanan"), a national law firm. All SSC's lawyers, except Plaintiff, were offered positions which provided for the full panoply of benefits a national law firm could provide. Defendants' discriminated against Plaintiff by refusing to provide her with any benefits, including but not limited to, critical disability and life insurance benefits.

4. Plaintiff was the only SSC employee subject to this discriminatory treatment. When Plaintiff refused to accept this unfair and discriminatory treatment, Buchanan withdrew their employment offer.

5. Thereafter, Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission (hereinafter also called the "EEOC"), which resulted in a finding of cause by the EEOC. (EEOC determination dated February 17, 2006 attached as Exhibit "A").

## JURISDICTION AND VENUE

6. The Court has jurisdiction pursuant to 42 §§ U.S.C. 2000e et seq.; 28 U.S.C. § 1331, § 1343 and pendent jurisdiction thereto with respect to the analog statutory and local employment laws covering discriminatory treatment.

7. Venue is proper in the Southern District of New York based upon Plaintiff's employment with Defendant Slotnick, Shapiro & Crocker LLP in New York, NY.

## PARTIES

8. Plaintiff Philippa Haggar is a forty-four year old woman who was diagnosed in 2002 with 'Stage IV' breast cancer, an advanced state of metastatic, typically incurable cancer that has spread to the bone and the brain. Plaintiff was employed as an attorney with law firm Slotnick, Shapiro & Crocker LLP commencing in 1996.

9. Defendant Slotnick, Shapiro & Crocker, LLP was a 'boutique' law firm concentrating its practice in complex civil litigation, matrimonial law and white-collar criminal litigation.

10. Defendant Buchanan Ingersoll & Rooney P.C. is a national law firm with offices in Pittsburgh, Harrisburg, Philadelphia, Alexandria, New York, Buffalo, Washington, D.C., Miami, Aventura, Tampa, Wilmington, Princeton, Newark, Cleveland, San Diego and Silicon Valley employing hundreds of attorneys and is

the fourth largest law firm in Pittsburgh, PA. In or about February 2005 Slotnick, Shapiro & Crocker, LLP folded into Buchanan Ingersoll & Rooney's New York City office, founded in 2000 and which now employs approximately 45 lawyers. Defendant Buchanan has maintained and does maintain various employee benefit plans within the meaning of 29 U.S.C. §1140.

11. Defendant Barry Ivan Slotnick (also described herein as "Slotnick") was a named partner and principal in the firm Slotnick, Shapiro & Crocker LLP and was a principal actor complicit in the discriminatory and retaliatory employment actions to which Plaintiff was subjected.

## PROCEDURAL PREREQUISITES

12. On or about June 8, 2005, Plaintiff, known as the "Charging Party" in EEOC parlance, filed charges of disability and/or perceived disability discrimination and retaliation, upon which this complaint is based, with the United States Equal Employment Opportunity Commission against SSC and Buchanan.

13. Thereafter, on February 17, 2006, the EEOC issued a determination that Buchanan and SSC violated the Americans with Disabilities Act of 1990, finding cause to believe that Plaintiff was discriminated against by Respondents on the basis of her disability and perceived disability. (Exhibit "A").

14. On or about June 8, 2006, the EEOC issued Plaintiff a 'Notice of Right to Sue', "NORTS" with respect to the charges of disability and/or perceived disability discrimination, as well as retaliation, entitling her to commence a civil action in federal court within 90 days of her receipt of the notice (NORTS attached as Exhibit "B").

## MATERIAL FACTS

15. Plaintiff has been a licensed practicing attorney since 1987. In or about 1996, Plaintiff left her partnership at a previous employer and joined Defendant SSC in an "of counsel" capacity.

16. During the length and breadth of her employment with SSC, Plaintiff handled a variety of litigation matters, including complex commercial and matrimonial cases for substantial clients.

17. In or about early 2000, Plaintiff, until then a "full-time" employee, negotiated a bilaterally beneficial new employment package with SSC. Pursuant to her new agreement, Plaintiff was paid thirty percent of her billable hours ($400.00 an hour in recent years) as well as a percentage of the cases she brought into SSC. She also continued to be fully covered by SSC health insurance policies and participated in SSC's 401k plan when it commenced. Defendant Slotnick, senior named partner at SSC, repeatedly assured her that she received the same benefits and privileges as SSC attorneys in comparable positions.

18. Plaintiff was diagnosed with Stage IV breast cancer in 2002. Stage IV breast cancer is *metastatic*, meaning that it has spread from the situs of origin. Plaintiff was *metastatic at presentation*, meaning that the breast cancer had spread beyond the breast and lymph nodes, although this was her first diagnosis of breast cancer. At the time of Plaintiff's diagnosis, her oncologist advised her that her condition was terminal. At the present time Plaintiff's cancer is both in the bone and the brain.

19. Following this bleak diagnosis and prognosis, Plaintiff underwent extensive and debilitating treatment protocols including radical surgical intervention (the cancer had spread to Plaintiff's bones, necessitating hip and femur bone removal) as well as radiation and chemotherapy. Plaintiff actually notified SSC and its principals of her medical condition and attendant treatment.

20. Throughout 2003, notwithstanding her grave, life-threatening condition, Plaintiff heroically (and successfully) managed her caseload at SSC. In 2003, Plaintiff earned more than $150,000.00 in compensation based upon her negotiated percentage of billable hours.

21. In or about 2004, Plaintiff's cancer stabilized. However, Plaintiff continued to require regular treatment as well as periodic and extensive testing to monitor the status and progress of her cancer. SSC was at all times aware of Plaintiff's medical condition since her diagnosis in 2002.

6

22. In or about January 2005, as indicated above, SSC was acquired in whole by Buchanan. Upon information and belief, acquisition discussions commenced in early 2004.

23. Despite Plaintiff's seniority at the firm with respect to tenure and experience, she was not personally advised of the imminent dissolution of SSC as it folded into Buchanan *in toto*. Plaintiff was finally informed of the acquisition of SSC on or about January 10, 2005, when an associate junior to Plaintiff asked her opinion of the Buchanan take-over. This junior associate had been advised of the this significant workplace change by Defendant Slotnick.

24. Subsequent to Plaintiff's conversation with the associate, she contacted Lawrence Crocker and Michael Shapiro in order to corroborate this information. Messrs. Crocker and Shapiro confirmed this acquisition and indicated that only Defendant Slotnick was involved in negotiating the terms of SSC's acquisition.

25. Plaintiff inquired as to why she had not been notified of the merger. She was advised by Crocker and Shapiro that Defendant Slotnick had insisted Plaintiff not be informed and further, that Defendant Slotnick was evasive as to whether Plaintiff would be included in the acquisition.

26. On or about January 20, 2005, Defendant Slotnick informed Plaintiff that she was indeed included in the impending merger of SSC into Buchanan. In a

subsequent conversation, Defendant Slotnick assured Plaintiff that she would in fact be "*better off*" as a consequence of the merger, compared to her previous terms and conditions of employment with SSC.

27. Commencing on or about January 26, 2005, Plaintiff commenced discussions with Defendant Slotnick, Stephen Ferber, Buchanan's Director of Human Resources and William O'Connor, Buchanan's Managing Partner in its New York City office, regarding the proposed prospective terms and conditions of Plaintiff's continued employment with SSC as it folded in its entirety into Buchanan. Plaintiff stressed that it was critical for her to obtain the full panoply of disability, health and life insurance benefits at Buchanan. All other SSC employees obtained such benefits following the merger.

28. At the time of these discussions, Messrs. O'Connor and Ferber informed Plaintiff of Buchanan's policy regarding eligibility for benefits, which allegedly required a Buchanan employee to work at least 1,560 hours per annum (approximately 30 hours per week). Plaintiff assured Defendants that she would work whatever hours necessary for her cases and to ensure that she met the requisite minimum number of work hours to become eligible for all of Buchanan's benefits. While as SSC Plaintiff had always met the demands of her caseload.

29. Despite Plaintiff's assurances, on or about February 2, 2005, she received a written offer of employment from Buchanan, dated January 31, 2005, for a

8

position of *Part-Time Counsel* with the firm. Pursuant to the terms of the offer, Plaintiff would be required to "bill" twenty hours per week, and would <u>not</u> be eligible to participate in Buchanan's employee benefits package. Upon information and belief, Ms. Haggar was the sole employee at SSC who was not offered a full benefit package at the time of Buchanan's acquisition of SSC.

30. Following Buchanan's "offer," Plaintiff complained, verbally and in writing, to both Defendant Slotnick, Mr. O'Connor as well as others, regarding Buchanan's failure to include disability, health, medical and/or life insurance benefits in its offer of employment to her. Buchanan acknowledged Plaintiff's willingness to work the minimum number of hours as a condition precedent to benefits eligibility, yet Defendants continued to refuse to offer Plaintiff the protective coverage of its umbrella benefits package.

31. Instead, on or about February 25, 2005, Buchanan presented Plaintiff with a modified offer of employment, wherein Plaintiff was obligated to secure her own independent medical insurance that would be reimbursed at an unspecified percentage of out-of-pocket costs and expenses incurred by her. Buchanan justified its refusal to offer Plaintiff coverage under its benefits package by contending it did not have sufficient work for Plaintiff to meet the 30 hour threshold requirement. Incredibly Buchanan, which is a national law firm, contended they did not have ten additional hours of work to offer to Plaintiff over their initial twenty hour proposal.

32. On or about February 28, 2005, Plaintiff sent correspondence to Messrs. O'Connor and Ferber, in which she objected to Buchanan's discriminatory treatment of her through its refusal to include benefits in its employment offer. At no time did Plaintiff refuse Buchanan's offer of employment.

33. Subsequent to Buchanan's receipt of this letter of complaint on February 28, 2005, *that same day*, Plaintiff received correspondence from Mr. O'Connor purporting to confirm that Plaintiff "*decided not to join*" Buchanan, and thereby, Buchanan was effectively withdrawing its offer of employment.

34. Further, Defendants' conduct deprived Plaintiff of the opportunity to receive the full benefits from Buchanan's employee benefit plans as defined in 29 U.S.C. §1002(7).

34. As a result of Defendants' unlawful discriminatory and retaliatory employment practices, Plaintiff Philippa Haggar has suffered lost wages and benefits, injury to her reputation, mental and emotional distress and pain and suffering.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER FEDERAL LAW

35. Plaintiff repeats, reiterates and reasserts all allegations contained in paragraphs 1 through 34 of this Complaint as if fully set forth herein at length.

36. Title I of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12112 (a) provides that it shall be an unlawful employment practice for an employer to :

> "...discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

37. Defendants Buchanan and SSC engaged in an unlawful employment practice prohibited by 42 U.S.C. § 12112 by terminating and otherwise discriminating against Plaintiff because of her disability and/or perceived disability.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER FEDERAL LAW

38. Plaintiff repeats, reiterates and reasserts all allegations contained in paragraphs 1 through 37 of this Complaint as if fully set forth herein at length.

39. Title V of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12203 (a) provides that it shall be an unlawful employment practice for an employer to:

> "...discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

40. Defendants Buchanan and SSC engaged in an unlawful employment practice

11

prohibited by *42 U.S.C. §12203 (a)* in retaliating against Plaintiff by terminating and otherwise discriminating and retaliating against Plaintiff because she opposed Defendants' unlawful employment practices and because she complained about employment discrimination.

AS A THIRD CAUSE OF ACTION
FOR DISCRIMINATION UNDER ERISA

41. Plaintiff repeats, reiterates and realleges all allegations contained in paragraphs 1 through 40 of this Complaint as if more fully set out herein.

42. The Employee Retirement Income Security Act ("ERISA"), Section 510, 29 U.S.C. §1140, provides that it shall be unlawful:

> "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . ."

43. Defendants engaged in an unlawful practice in violation of ERISA by terminating and otherwise discriminating against Plaintiff for the purpose of interfering with the attainment of rights to which Plaintiff would have been entitled under an applicable an employee benefit plan.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

44. Plaintiff repeats, reiterates and reasserts all allegations contained in paragraphs 1 through 43 of this Complaint as if fully set forth herein at length.

45. New York State Executive Law §296(1)(a) provides that it shall be an unlawful discriminatory practice:

> "For an employer . . . because of . . . disability . . . of any individual . . . to discharge from employment such individual or to discriminate against such individual in...terms, conditions or privileges of employment."

46. Defendants Buchanan, SSC and Slotnick engaged in an unlawful discriminatory practice in violation of Executive Law §296(1)(a) by terminating and otherwise discriminating against Plaintiff because of her disability and/or perceived disability.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

47. Plaintiff repeats, reiterates and reasserts all allegations contained in paragraphs 1 through 43 of this Complaint as if fully set forth herein at length.

48. New York State Executive Law §296(1)(e) provides that it shall be an unlawful discriminatory practice:

> "For any employer . . . .to discharge, expel or otherwise discriminate against any person because he or she has

> opposed any practices forbidden under this article or because he has filed a complaint, testified or assisted in any proceeding under this article."

49. Defendants Buchanan, SSC and Slotnick engaged in an unlawful discriminatory practice in violation of Executive Law §296(1)(e) by terminating Plaintiff and otherwise discriminating against Plaintiff because she opposed defendants' unlawful employment practices.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

50. Plaintiff repeats, reiterates and reasserts all allegations contained in paragraphs 1 through 49 of this Complaint as if fully set forth herein at length.

51. Article 15 of the New York State Human Rights Law, section 296 (6) states that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

52. Defendant Slotnick engaged in an unlawful discriminatory practice in violation of New York State Human Rights Law 296 (6) by aiding, abetting, inciting, compelling and coercing the discriminatory employment practices suffered by Plaintiff.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER CITY LAW

53. Plaintiff repeats, reiterates and reasserts all allegations contained in paragraphs 1 through 52 of this Complaint as if fully set forth herein at length.

54. The New York City Administrative Code Title 8, §8-107(1)(a) provides that it shall be an unlawful discriminatory practice:

> "For an employer . . . because of...disability . . . to discharged from employment such person or to discriminate against such person..."

55. Defendants Buchanan, SSC and Slotnick engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by discriminating against Plaintiff and discharging Plaintiff based upon her disability and/or perceived disability.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER CITY LAW

56. Plaintiff repeats, reiterates and reasserts all allegations contained in paragraphs 1 through 55 of this Complaint as if fully set forth herein at length.

57. The New York City Administrative Code Title 8, §8-107(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (I) opposed any practice forbidden under this chapter..."

58. Defendants Buchanan, SSC and Slotnick engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(7) by discriminating against Plaintiff and discharging Plaintiff, and retaliating against Plaintiff because she complained about discriminatory employment practices.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER CITY LAW

59. Plaintiff repeats, reiterates and reasserts all allegations contained in paragraphs 1 through 58 of this Complaint as if fully set forth herein at length.

57. The New York City Administrative Code Title 8 §8-107(6) provides that it shall be unlawful discriminatory practice:

> For any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

58. Defendant Slotnick engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8 §8-107(1)(a) by aiding, abetting, inciting, compelling and coercing the discriminatory employment practices suffered by Plaintiff.

## REMEDY

WHEREFORE, Plaintiff requests a judgment against the Defendants:

A. Declaring that Defendants engaged in an unlawful employment practice

prohibited by Title I and Title V of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12101 et seq., and 42 U.S.C. §§12201 et seq., the New York State Executive Law §§ 296 et seq. and New York City Administrative Code Title 8, §§8-107 et seq. by discriminating against and retaliating against Plaintiff;

B.   Awarding income to the Plaintiff in an amount to be proven representing all loss of earnings, including reasonable and expected increases, loss of retirement income, loss of long term and short term disability benefits, loss of health and life insurance and all other benefits she would have expected to earn had it not been for Defendants unlawful discriminatory and retaliatory practices;

C.   Awarding damages to the Plaintiff for back pay and to otherwise 'make her whole' for any and all losses suffered as a result of such unlawful employment practices;

D.   Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven at trial;

E.   Awarding Plaintiff punitive damages;

F.   Awarding Plaintiff attorneys' fees, costs and expenses incurred in the prosecution of the action;

G.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

JURY DEMAND

Plaintiff demands a trial by jury.

Dated:   New York, New York
         October 4, 2006

Tuckner, Sipser, Weinstock & Sipser, LLP

By: _____
William Sipser (WS1781)
Attorneys for Plaintiff
120 Broadway, 18th Floor
New York, New York 10271
(212) 766-9100
wsipser@womensrightsny.com
www.womensrightsny.com